# In the United States Court of Federal Claims

No. 15-666 C

Filed: March 11, 2016

*****************************************
|   |   |
|---|---|
| * | Fed. R. Civ. P. 13(f) |
| * | (Counterclaim and Crossclaim); |
| GOVERNMENT SERVICES CORP., * | Rule 12(b)(6) of the Rules of the |
| * | United States Court of |
| Plaintiff, * | Federal Claims ("RCFC") |
| * | (Failure to State a Claim); |
| v. * | RCFC 13(a) (Compulsory |
| * | Counterclaim); |
| THE UNITED STATES, * | RCFC 15(a)(3) (Amended and |
| * | Supplemental Pleadings). |
| Defendant. * |   |

*****************************************

**Gregory Richard Rauch**, Magyer, Rauch & Thie, PLLC, Moscow, Idaho, Counsel for Plaintiff.

**Mark Edward Porada**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND ORDER CONCERNING PLAINTIFF'S MOTION TO DISMISS THE GOVERNMENT'S COUNTERCLAIMS**

I.   **RELEVANT FACTUAL BACKGROUND.**[1]

On November 5, 2012, during the State of Emergency after Hurricane Sandy, the United States Customs and Border Protection ("CBP") issued a Solicitation, seeking a vendor to provide a fuel tanker and 40,000 gallons of regular unleaded gasoline at John F. Kennedy International Airport ("JFK"). Am. Compl. Att. 2. The Solicitation stated that the gasoline would be "dispensed from the truck to the tank. Vendors should include all taxes in the price of fuel[.]" Am. Compl. Att. 2. That same day, the CBP awarded Government Services Corporation ("GSC") a contract to perform this work. Am. Compl. ¶¶ 6–10.

After dispatching several fuel trucks to JFK, on arrival the CBP directed GSC to provide gas-station style services to CBP employees onsite, instead of a bulk delivery of gasoline. Am.

---

[1] The relevant facts cited herein are derived from the October 7, 2015 Amended Complaint ("Am. Compl.") and attachments ("Am. Compl. Atts. 1–6").

Compl. ¶¶ 11–12.  The CBP also required that GSC accept payment from CBP employee debit and credit cards.  Am. Compl. ¶¶ 11–13.[2]

In an effort to comply with the CBP's needs, GSC sent four senior supervisory employees to New York and New Jersey to set up impromptu "gas stations."  Am. Compl. ¶¶ 14–16.  GSC, however, only dispensed a fraction of the fuel ordered and sold the rest at a discount to mitigate the costs imposed by the CBP's changed requirements.  Am. Compl. ¶ 17.  On February 15, 2013, the CBP cancelled the November 5, 2012 Solicitation.  Am. Compl. Att. 5.

On April 17, 2014, GSC submitted a certified claim to the Contracting Officer for $176,193.60 incurred to comply with changes to the original contract.  Am. Compl. Att. 6, at 1.  On July 17, 2014, the Contracting Officer issued a final decision denying GSC's claim.  Am. Compl. Att. 7.

## II.  PROCEDURAL HISTORY.

On June 26, 2015, GSC ("Plaintiff") filed a Complaint in the United States Court of Federal Claims with four counts ("Compl.").  Count One alleged a breach of contract by cardinal change.  Count Two alleged a constructive change.  Count Three alleged quantum meruit and a breach of an implied-in-fact contract.  Count Four alleged a breach of the duty of good faith and fair dealing.  The June 26, 2015 Complaint also included six attachments ("Compl. Atts. 1–6").  Attachment 4 was an email between the Contracting Officer, Ebrima Conteh, and one of Plaintiff's employees, Matthew Ruck dated, "Monday, November 06, 2012 6:02 AM."  Compl. Att. 4, at 1.

On August 27, 2015, the Government filed an Answer, but did not assert any affirmative defenses or counterclaims.

On October 2, 2015, Plaintiff filed a Motion To Amend Pleadings which the court granted.  On October 7, 2015, Plaintiff filed an Amended Complaint that did not include Attachment 4.  On October 19, 2015, the parties submitted a Joint Preliminary Status Report.

On October 22, 2015, the Government filed a Motion For Enlargement Of Time To Respond To The Amended Complaint ("Gov't Mot. For Enlargement").  In that Motion, the Government stated, "In light of . . . the apparent discrepancies between the acknowledged email evidence and the contentions made in [P]laintiff's [C]omplaint, [the Government] is in the process of considering the assertion of counterclaims."  Gov't Mot. For Enlargement at 2–3.  That same day, the court issued an Order granting the Government's Motion.

On October 26, 2015, the court issued a Scheduling Order.  On October 29, 2015, Plaintiff filed a Motion For Reconsideration Re: Order On Motion For Extension Of Time To Answer.  On October 30, 2015, the Government filed a Motion For Leave To File Response To Plaintiff's Motion For Reconsideration that the court granted.  On November 11, 2015, the court denied Plaintiff's October 29, 2015 Motion.

---

[2] The parties disagree about when GSC learned of these requirements.

On December 10, 2015, the Government filed an Answer To Amended Complaint ("Answer") stating that the email attached to the June 26, 2015 original Complaint "was sent on Monday, November 5, 2012 at 6:02 p.m. . . . was *before* GSC responded that it had commenced scheduling its gasoline shipments and *before* CBP informed GSC that it had been awarded the contract."  Answer ¶ 116 (emphasis in the original).  In the Government's opinion, this development warranted three counterclaims.  The first counterclaim alleged that, under the Special Plea in Fraud, 28 U.S.C. § 2514, Plaintiff's entire claim should be forfeited.  Answer ¶ 127.  The second counterclaim alleged that, under the False Claims Act, 31 U.S.C. § 3729, Plaintiff knowingly submitted a false or fraudulent claim for payment by the United States and used a false record as support and is liable for up to $11,000.  Answer ¶¶ 131–32, 135.  The third counterclaim alleged that, under the Contract Disputes Act, 41 U.S.C. § 7103, Plaintiff is liable for at least $183,788.86 in damages, plus the costs of reviewing Plaintiff's fabricated claim.  Answer ¶¶ 138–39.

On January 4, 2016, Plaintiff filed a Motion To Strike and Motion To Dismiss The Government's Answer To Amended Complaint ("Pl. Mot.").  On January 7, 2016, the court issued an Order denying the Motion To Strike.  On January 8, 2016, the court issued another Order, clarifying that, "[a]lthough Plaintiff's Motion To Strike is denied, the court will issue a separate ruling on Plaintiff's Motion To Dismiss in due course."  Dkt. No. 18, at 1.

On January 11, 2016, the Government filed a Motion To Compel and a Motion For Extension Of Time Until April 20, 2016 To Complete Discovery.  On January 13, 2016, Plaintiff filed a Response and a Motion To Strike Discovery.  On January 14, 2016, the court convened a status conference.  On January 19, 2016, the court issued an Order denying the Government's January 11, 2016 Motion For Extension Of Time and finding as moot the Government's January 11, 2016 Motion To Compel, so that Plaintiff's January 13, 2016 Motion also was moot.

On January 22, 2016, the Government filed an Opposition To Plaintiff's January 4, 2016 Motion To Dismiss Defendant's Counterclaims ("Gov't Opp.").  On February 8, 2016, Plaintiff filed a Reply.

### III.   DISCUSSION

#### A.  Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive

3

agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

The October 7, 2015 Amended Complaint alleges a contractual relationship with the Government. As such, the court has jurisdiction to adjudicate the claims alleged in the October 7, 2015 Amended Complaint and Plaintiffs' January 4, 2016 Motion To Dismiss The Government's December 10, 2015 Counterclaims.

### B. Plaintiff's January 4, 2016 Motion To Dismiss The Government's December 10, 2015 Counterclaims.

#### 1. Plaintiff's Argument.

Plaintiff argues that the Government knew that it had grounds to file a counterclaim for fraud prior to filing the August 27, 2015 Answer and now is barred from doing so. Pl. Mot. at 1–2 (quoting RCFC 13(a)).[3] In addition, the Government should have requested leave of the court, before moving to amend the Answer. Pl. Mot. at 6. "Federal [c]ourts have held that '[a] defendant may file an amended response without leave only when the amended complaint changes the theory or scope of the case[.]'" Pl. Mot. at 5 (citing *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, No. C06-1056RSL, 2007 WL 1575955, *1 (W.D. Wash. May 29, 2007) ("A more moderate view allows a party to file an amended response without leave only when the amended complaint changes the theory or scope of the case[.]")).

Plaintiff adds that the October 7, 2015 Amended Complaint did not change the theory or scope of this case, but amended the paragraph of the June 26, 2015 Complaint that referenced an email displaying an "incorrect date likely due to a [server] error." Pl. Mot. at 5. But, "[t]he operative set of facts did not change from the original [C]omplaint to the [A]mended [C]omplaint." Pl. Mot. at 5. As such, the Government was required to seek leave to amend the August 27, 2015 Answer. Pl. Mot. at 5.

---

[3] RCFC 13(a) provides, "A pleading must state, as a counterclaim, any claim that—at the time of its service—the pleader has against an opposing party, if the claim: . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]"

### 2.     The Government's Response.

The Government responds that it is entitled to file counterclaims as a matter of right. Gov't Opp. at 1. The original June 26, 2015 Complaint alleged that the CBP did not inform Plaintiff of material changes to the contract until after it was awarded. Gov't Opp. at 5 (citing Compl. ¶ 116). To evidence that allegation, Plaintiff appended Attachment 4, an email from the CBP dated, "Monday, November 06, 2012, 6:02 A.M." to the June 26, 2015 Complaint. Gov't Opp. at 5 (citing Compl. Att. 4). But, November 6, 2012 was a Tuesday, not a Monday. Gov't Opp. at 5. Therefore, the email that "informed [Plaintiff] of the necessary terms for the contract was sent on Monday, November 5, 2012 at 6:02 p.m. EST . . . *before* [Plaintiff] emailed that it had commenced scheduling . . . gasoline shipments and *before* CBP informed [Plaintiff] that it had been awarded the contract." Gov't Opp. at 6. When the Government informed Plaintiff of this discrepancy, Plaintiff filed an Amended Complaint on October 7, 2015. Gov't Opp. at 6. Although the Government recognizes that there appears to be no direct authority on point from the [United States] Court of Federal Claims, other courts have held that a defendant is free[,] as a matter of right[,] to assert counterclaims in response to the filing of an amended complaint[.]" Gov't Opp. at 10 (citing *Am. Home Products Corp. v. Johnson & Johnson*, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) ("When [plaintiff] filed its amended complaint, [defendant] was entitled as of right to file a responsive pleading[.]")). Therefore, the Government "was entitled as a matter of right to file . . . counterclaims along with its answer to the [A]mended [C]omplaint, and [Plaintiff's] motion should be denied." Gov't Opp. at 13.

In addition, the Government contends that, "even if leave of [the] [c]ourt had been required and requested for the filing of the counterclaim, leave properly would have been granted[.]" Gov't Opp. at 1. Under RCFC 15, "[a]bsent some reason such as bad faith, undue delay, or undue prejudice to the opposing party, 'the leave sought should, as the rules require, be 'freely given.'" Gov't Opp. at 15 (quoting *Cooke v. United States*, 79 Fed. Cl. 741, 742 (2007)). There was no undue delay, because the Government filed counterclaims less than four months after filing an initial Answer. Gov't Opp. at 15. Moreover, Plaintiff is not prejudiced, because "[i]ndeed, in [Plaintiff's] first sets of interrogatories, document requests, and requests for admissions . . . GSC initiated extensive discovery related to the Governments' allegations of fraud . . . [so that] GSC has known for months of the Government's potential fraud claims." Gov't Opp. at 16–17. Moreover, since Plaintiff produced the altered email, Plaintiff "hardly can claim surprise[.]" Gov't Opp. at 17.

### 3.     The Court's Resolution.

It is well-established that "when the complaint is amended [the] defendant should be entitled to amend the answer to meet the contents of the new complaint[.]" 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1476 (3d ed.) ("WRIGHT & MILLER").

5

But, RCFC 15(a)(3) provides:

*Unless the court orders otherwise*, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

RCFC 15(a)(3) (emphasis added).[4]

Plaintiff filed an Amended Complaint on October 7, 2015. The Government had fourteen days to respond. *See* RCFC 15(a)(3). Although the Government was not entitled to respond as a matter of right after 14 days, the court implicitly granted the Government leave to amend the August 27, 2015 Answer when it granted the Government's October 22, 2015 Motion For Extension Of Time. This is so, because the Government advised the court that it was "in the process of considering the assertion of counterclaims." Gov't Mot. For Enlargement Of Time at 3. Therefore, Plaintiff was on notice that the Government may file counterclaims and the court so ordered.

For these reasons, the court has determined that the Government's Amended Answer was not untimely nor prejudicial and the court's October 22, 2015 Order evidences the Government's compliance with RCFC 15(a)(3).

## IV. CONCLUSION.

For these reasons, the court denies Plaintiff's January 4, 2016 Motion To Dismiss. On April 30, 2016, the parties will complete expert discovery. On May 20, 2016, the parties will submit a Joint Status Report, proposing the schedule for post-discovery proceedings.

s/ Susan G. Braden<br>
**SUSAN G. BRADEN**<br>
**Judge**

---

[4] Prior to 2009, when the Federal Rules of Civil Procedure were amended, there was some uncertainty as to whether Rule 13(f) or Rule 15(a) governed when counterclaims must be filed. 6 WRIGHT & MILLER § 1479. Fed. R. Civ. P. 13(f) required that "a pleader who failed to assert a counterclaim in the original pleading through oversight, inadvertence, or excusable neglect may interpose it by amendment only with the court's permission." *Id.* (internal quotations omitted). But, other courts ruled that Fed. R. Civ. P. 15(a) governed. *Id.* Nevertheless, "[w]hatever confusion existed regarding which provision should control was eliminated with the 2009 amendments to Rule 13. Those amendments abrogated subdivision (f) . . . clarifying that the decision whether an amendment adding an omitted counterclaim is permissible is governed . . . by Rule 15." *Id.*