# In the United States Court of Federal Claims

No. 15-666 C
Filed: March 30, 2017

| | |
|---|---|
| **************************************** | |
| | * Breach Of Contract; |
| | * Breach Of Covenant Of Good Faith And |
| | * Fair Dealing; |
| | * Breach of Implied Contract; |
| | * Contract Disputes Act (41 U.S.C. § 7104); |
| GOVERNMENT SERVICES CORP., | * Counterclaims (28 U.S.C. § 2508); |
| | * False Claims Act (31 U.S.C. § 3729); |
| Plaintiff, | * Federal Acquisition Regulation ("FAR") |
| | * 48 C.F.R §§ 1.104, 2.101, |
| v. | * 12.604(c), 14.208(a), 14.301, |
| | * 33.211, 52.212; |
| THE UNITED STATES, | * Rules of The United States Court Of |
| | * Federal Claims ("RCFC") |
| Defendant. | * 6(b)(1) (Extending Time), |
| | * 8 (General Rules Of Pleading), |
| | * 12 (Defenses And Objections), |
| | * 15(a)(2),(3) (Amended Pleadings), |
| | * 56(a) (Summary Judgment); |
| | * Special Plea In Fraud (28 U.S.C. § 2514); |
| | * Uniform Electronic Transaction Act |
| | * ("UETA"), Idaho Code Ann. § 28- |
| **************************************** | 50-115. |

**Jefferson Ragnar Griffeath**, Bamcis Legal PLLC, Moscow, Idaho, Counsel for Plaintiff.

**Mark Edward Porada**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART THE GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

This Memorandum Opinion And Order adjudicates Cross-Motions For Summary Judgment filed in a breach of contract case initiated by Government Services Corporation, a corporation with its principal office and place of business in Moscow, Idaho.

To facilitate review of this Memorandum Opinion And Order, the court has provided the following outline:

I.   **RELEVANT FACTUAL BACKGROUND.**

II.  **PROCEDURAL HISTORY.**

III. **DISCUSSION.**

    **A. Jurisdiction.**

        **1.  Counts Alleged By Plaintiff's October 7, 2015 Amended Complaint.**

        **2.  Counterclaims Alleged By The Government's December 10, 2015 Answer.**

    **B. Standing.**

    **C. Standard Of Review For A Motion For Summary Judgment, Pursuant To RCFC 56.**

    **D. The Parties' Cross-Motions For Summary Judgment.**

        **1.  Plaintiff's September 15, 2016 Motion For Summary Judgment.**

        **2.  The Government's September 15, 2016 Cross-Motion For Summary Judgment And Counterclaims.**

        **3.  Plaintiff's October 17, 2016 Response.**

        **4.  The Government's October 17, 2016 Response.**

        **5.  The Government's November 3, 2016 Reply.**

        **6.  The Government's March 20, 2017 Supplemental Brief.**

    **E. The Court's Resolution.**

        **1.  Claims Alleged By Plaintiff's October 7, 2015 Amended Complaint.**

            **a.  Counts One And Two: Cardinal And Constructive Change.**

            **b.  Count Three: Implied-In-Fact Contract.**

            **c.  Count Four: Breach Of Duty Of Good Faith And Fair Dealing.**

        **2.  Counterclaims Alleged by The Government's December 10, 2015 Answer.**

IV.  **CONCLUSION.**

## I.      RELEVANT FACTUAL BACKGROUND.[1]

On Monday, November 5, 2012, at 1:34 PM Eastern Standard Time ("EST"),[2] in response to a declared State of Emergency after Super Storm Sandy, the United States Department of Homeland Security ("DHS"), acting through United States Customs and Border Protection ("CBP"), issued Solicitation Number 20074623 ("the Solicitation"), for an estimated 40,000 gallons of fuel to be delivered to John F. Kennedy International Airport ("JFK Airport"). Am. Compl. Att. 1 at 1; Gov't App'x at A8–A9. The Solicitation was posted on www.Fedbid.com, the Internet-based reverse auction marketplace. Am. Compl. Att. 1 at 1; Gov't App'x at A8. On that same day, at 2:52 PM, the Solicitation was amended to state that CBP needed "a vendor to provide a gasoline tanker at JFK [I]nternational Airport. The estimated amount of regular unleaded gasoline required is 40,000 gallons[.] Also, this will be dispensed from the truck to the tank. Vendors should include all taxes in the price of fuel." Am. Compl. Att. 2 at 2; Gov't App'x at A17. The Solicitation, as amended, stated that the auction period would end at 4:30 PM that same day. Am. Compl. Att. 2 at 1; Gov't App'x at A17.

At the close of the auction period, Government Services Corporation ("GSC") was listed as the "lead" contractor, because it offered the lowest bid price. Gov't App'x at A14. On that same day, at 5:27 PM, Mr. Matt Ruck, GSC's President, sent an e-mail to Mr. Ebrima Conteh, the CBP Contracting Officer ("CO") and Contracting Specialist ("CS"), identified in the Solicitation, stating that: "I am trying to schedule the loads. Can you confirm a contract award yet. I don't need the paperwork yet but I do need [i]n writing from you [to] go ahead." Gov't App'x at A27. The CO responded a minute later that he was attempting to "coordinate with Avis Car rental." Gov't App'x at A27; 9/9/16 Conteh Decl. ¶ 9 (explaining that CPB intended to make use of Avis Rent-a-Car's underground storage tank).

On that same day, at 6:02 PM, the CO sent an e-mail to Mr. Ruck, stating:

What CBP needs currently is a Fuel tank with capabilities to dispense fuel into our employee's personal own vehicles. Also, we will require you to accept personal credit cards from CBP employees. Although I cannot guarantee that you will sell

---

[1] The facts discussed herein are derived from: the October 7, 2015 Amended Complaint ("Am. Compl.") and attachments thereto ("Am. Compl. Atts. 1–7"); the September 30, 2015 Affidavit of Matt Ruck ("9/30/15 Ruck Affidavit"); the Government's December 10, 2015 Answer To Amended Complaint ("Gov't Answer") and Exhibits ("Gov't Answer Exs. 1–8"); the attachments to Government Services Corporation's September 15, 2016 Motion For Summary Judgment ("Pl. Mot. Atts. 1–5"); the September 14, 2016 Affidavit of Mr. Ruck ("9/14/16 Ruck Affidavit"); and an Appendix attached to the Government's September 15, 2016 Motion For Summary Judgment ("Gov't App'x at A1–A127"), including the September 9, 2016 Declaration of Ebrima Conteh ("9/9/16 Conteh Decl."); and the February 16, 2016 Deposition of Matt Ruck ("2/16/16 Ruck Dep.").

[2] All timestamps in this Memorandum Opinion And Order are EST, unless otherwise noted.

all the fuel; I estimated that the current need for fuel is approximately 80,000 gallons. 40,000 gallons for JFK [A]irport and 40,000 for Newark [L]iberty Airport.

Gov't App'x at A30.[3]

At 7:50 PM, Mr. Ruck replied to the CO: "I have required arrangements in place and am dispatching trucks. If you want to send the orders we will be ready." Gov't App'x at A27.

At 8:19 PM,[4] the CO sent an e-mail to Mr. Ruck "to inform you of the selection of your company to bring fuel trucks to John F. Kennedy International Airport and Newark Liberty [I]nternational Airport and sell fuel directly to US Customs Employees." Am. Compl. Att. 3; Gov't App'x at A35.

At 10:04 PM, Mr. Ruck replied by an e-mail to the CO: "I need exact location and on site contact information for these two locations." Gov't App'x at A124. After dispatching multiple fuel trucks to both JFK Airport and to Newark Liberty International Airport ("Newark Airport"), GSC allegedly learned for the first time that this was not a bulk delivery to underground storage tanks, but required gas-station style services to CBP employees and acceptance of payments, via debit cards and credit cards, from the individuals purchasing gasoline. Am. Compl. ¶¶ 11–13.

In response and to comply with CBP's requirements, GSC sent four senior supervisory employees to New York and New Jersey to set up impromptu "gas stations." Am. Compl. ¶¶ 14–16. GSC, however, dispensed only a fraction of the fuel ordered and had to sell the rest at a discount to mitigate potential damages. Am. Compl. ¶ 17. On February 15, 2013, CBP cancelled the Solicitation on www.Fedbid.com. Am. Compl. Att. 5.

On April 17, 2014, GSC submitted a certified claim to CBP, seeking $176,193.60 for costs incurred to comply with changes to the Solicitation. Am. Compl. Att. 6, at 1. On July 17, 2014, Denise Williams, a CBP CO, issued a final decision denying GSC's claim. Am. Compl. Att. 7.

## II.   PROCEDURAL HISTORY.

On June 26, 2015, GSC ("Plaintiff") filed a Complaint ("Compl.") in the United States Court of Federal Claims, requesting $183,788.86 in damages. ECF No. 1. Count One alleged a breach of contract by cardinal change; Count Two alleged a constructive change to the contract; Count Three alleged an implied-in-fact contract requiring compensation under principles of *quantum meruit*; and Count Four alleged a violation of the duty of good faith and fair dealing.

---

[3] But, Mr. Ruck advised the court that he was not aware of the additional requirements listed in the November 5, 2012 6:02 PM e-mail, until after GSC began providing gasoline to CBP. 9/14/16 Ruck Affidavit ¶¶ 2–5.

[4] Because GSC is located in Idaho, it operates under Pacific Standard Time ("PST"). Therefore, Mr. Ruck received the CO's November 5, 2012 8:19 PM EST e-mail at 5:19 PM PST. *Compare* Gov't App'x at A35 (Government Record of the CO's e-mails evidencing a sent time of November 5, 2012 at 8:19 PM EST) *with* Am. Compl. Att. 3 (GSC record of the CO's e-mails evidencing a sent time of November 5, 2012 at 5:19 PM PST).

Compl. ¶¶ 1–65.  In support, Plaintiff filed seven Attachments ("Compl. Atts. 1–7").  Attachment 4 was the Monday, November 5, 2012 6:02 PM e-mail from the CO to Mr. Ruck, regarding CBP's requirement that gasoline be dispensed directly to employees' personal vehicles, but was marked "Monday, November 06, 2012 6:02 AM."[5]  Compl. Att. 4.

On August 27, 2015, the Government filed an Answer.  ECF No. 6.

On October 2, 2015, Plaintiff filed a Motion To Amend Pleadings, because the date on Attachment 4 was incorrect, allegedly due to a "computer server program error;" the correct date was Monday, November 5, 2012 at either "23:02:20 UTC [Coordinated Universal Time]" or "15:02:20 Pacific Time."[6]  ECF No. 7-1 at 1.  Plaintiff also filed a September 30, 2015 Affidavit from Mr. Ruck ("9/30/15 Ruck Affidavit"), who attested that the incorrectly dated e-mail was the result of a computer error and that the e-mail was received by Plaintiff's server either at 23:02:20 UTC or 3:02 PM PST.  9/30/15 Ruck Affidavit ¶¶ 2–7.

On October 5, 2015, the court granted Plaintiff's October 2, 2015 Motion, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 15(a)(2).  ECF No. 8.  On October 7, 2015, Plaintiff filed an Amended Complaint.[7]  ECF No. 9.  On October 19, 2015, the parties submitted a Joint Preliminary Status Report.  ECF No. 10.  On October 26, 2015, the court issued a Scheduling Order.  ECF No. 12.

On December 10, 2015, the Government filed an Answer to the October 7, 2015 Amended Complaint.  ECF No. 15.  The December 10, 2015 Answer alleged that the November 6, 2012 e-mail referenced in the original Complaint, in fact, "was sent on Monday, November 5, 2012 at 6:02 [PM]. . . . [B]efore GSC responded that it had commenced scheduling its gasoline shipments and before CBP informed GSC [via e-mail] that it had been awarded the contract."  Gov't Answer ¶ 116 (emphasis original).  Therefore, the Government asserted that Plaintiff's claim was fraudulent and raised three additional counterclaims.  Gov't Answer ¶ 116.  The first counterclaim alleged that, under the Special Plea in Fraud, 28 U.S.C. § 2514, Plaintiff's entire claim should be forfeited.  Gov't Answer ¶¶ 127–29.  The second counterclaim alleged that, under the False Claims Act, 31 U.S.C. § 3729, Plaintiff knowingly submitted a false or fraudulent claim for payment by the United States and used a false record to support its claim, and was liable for up to $11,000.  Gov't Answer ¶¶ 131–35.  The third counterclaim alleged that, under the Contract Disputes Act, 41 U.S.C. § 7103, Plaintiff was liable for at least $183,788.86 in damages, plus the costs of reviewing Plaintiff's fraudulent claim.  Gov't Answer ¶¶ 137–39.

On January 4, 2016, Plaintiff filed a Motion To Strike And Motion To Dismiss The Government's Answer To Amended Complaint.  ECF No. 16.  On January 7, 2016, the court issued an Order denying the Motion To Strike.  ECF No. 17.  On January 8, 2016, the court issued

---

[5] November 6, 2012, however, was a Tuesday, and not a Monday.

[6] Both of these time stamps are the equivalent of 6:02 PM EST.

[7] Although Plaintiff removed the incorrectly dated e-mail as an attachment, the Amended Complaint otherwise alleged the same four counts as the June 6, 2015 Complaint.

another Order, clarifying that "[a]lthough Plaintiff's Motion To Strike is denied, the court will issue a separate ruling on Plaintiff's Motion To Dismiss in due course." ECF No. 18. On January 11, 2016, the Government filed a Motion To Compel and a Motion For Extension Of Time Until April 20, 2016 To Complete Discovery. ECF No. 19. On January 13, 2016, Plaintiff filed a Response and a Motion To Strike Discovery. ECF Nos. 20, 21. On January 14, 2016, the court convened a status conference. On January 19, 2016, the court issued an Order ruling that the Government's January 11, 2016 Motion To Compel was moot and denying the Government's January 11, 2016 Motion For Extension Of Time. In addition, the court also denied Plaintiff's January 13, 2016 Motion To Strike. ECF No. 22. On January 22, 2016, the Government filed an Opposition To Plaintiff's Motion To Dismiss Defendant's Counterclaims. ECF No. 23. On February 8, 2016, Plaintiff filed a Reply. ECF No. 24.

On March 11, 2016, the court issued a Memorandum Opinion And Order Concerning Plaintiff's January 4, 2016 Motion To Dismiss The Government's Counterclaims. *See Government Services Corp. v. United States*, 125 Fed. Cl. 586 (2016). Therein, the court determined that the December 10, 2015 Answer "was not untimely nor prejudicial," and the Government timely filed an Amended Answer, pursuant to RCFC 15(a)(3). *Id.* at 591; *see also* RCFC 15(a)(3) ("*Unless the court orders otherwise*, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." (emphasis added)).

On April 27, 2016, the court issued a scheduling order governing expert discovery and post-discovery proceedings. ECF No. 29.

On May 25, 2016, Plaintiff's counsel filed a Motion For Withdrawal. ECF No. 30. On May 31, 2016, the Government filed a Response. ECF No. 31. On June 9, 2016, the court issued an Order, requiring Plaintiff to substitute counsel within twenty-one days. ECF No. 32. On June 27, 2016, Plaintiff filed a Motion To Extend Deadline To Substitute Counsel, that the court granted the following day. ECF Nos. 33, 34.

On July 11, 2016, Plaintiff filed a Notice Of Substitution Of Counsel. ECF No. 36. On July 20, 2016, the court issued a Scheduling Order requiring the parties to file any dispositive motions by September 15, 2016. ECF No. 39.

On September 15, 2016, Plaintiff filed a Motion For Summary Judgment ("Pl. Mot.") with five Attachments, including (1) the November 5, 2012 Solicitation; (2) the November 5, 2012 2:52 PM amendment to the Solicitation; (3) the November 5, 2012 8:19 PM notice of award e-mail from the CO to Mr. Ruck; (4) the CO's Certificate of Appointment; and (5) the September 14, 2016 Affidavit of Mr. Ruck. ECF No. 40. On that same day, the Government filed a Cross-Motion For Summary Judgment ("Gov't Mot."), and attached an Appendix. ECF No. 41.

On October 17, 2016, Plaintiff filed a Response to the Government's September 15, 2016 Cross-Motion For Summary Judgment ("Pl. Resp."), attaching the March 18, 2016 report of William F. Odom for the United States Department of Justice ("3/18/16 Odom Rep.") and the June 2, 2016 report of Jon A. Berryhill for Plaintiff ("6/2/16 Berryhill Rep."). ECF No. 44. On that same day, the Government also filed a Response to Plaintiff's September 15, 2016 Motion For

Summary Judgment ("Gov't Resp."). ECF No. 45. On November 3, 2016, the Government filed a Reply to Plaintiff's October 17, 2016 Response ("Gov't Reply"). ECF No. 46.

On February 23, 2017, the court sent an e-mail to the parties, explaining that: the court drafted an opinion on the parties' outstanding Cross-Motions For Summary Judgment; but Plaintiff had not filed an answer to the Government's December 10, 2015 counterclaims, nor had Plaintiff requested leave of the court to file an answer out of time, pursuant to RCFC 6(b)(1)(B). The court instructed Plaintiff that, if it intended to file a motion to file an answer out of time, it was due by February 27, 2017. The court also explained that, under RCFC 8(b)(6), "[a]n allegation—other than one related to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."

On February 26, 2017 Plaintiff filed a Motion To File Answer To Defendant's Counterclaims Out Of Time ("2/26/17 Pl. Mot."). ECF No. 47. On March 2, 2017, the Government filed an Opposition ("Gov't Opp."). ECF No. 48.

On March 9, 2017, the court issued a Memorandum Opinion And Order that granted Plaintiff's February 26, 2017 Motion to file an answer out of time. *See Government Services Corp. v. United States*, ___ Fed. Cl. ___, 2017 WL 933099, at *4 (2017). In the March 9, 2017 Memorandum Opinion And Order, the court explained that denying Plaintiff's motion would result in an effective default judgment in favor of the Government under RCFC 8(b)(6). *Id.* at *3. Because Plaintiff had denied the Government's counterclaims, albeit not in pleading, and because Plaintiff had otherwise "diligently pursued" this case in every other regard, the court determined that Plaintiff could file an answer out of time. *Id. at* *4 (citing *Information Systems & Network Corp. v. United States*, 994 F.2d 792, 797 (Fed. Cir. 1993) (holding that it was an abuse of discretion to enter default judgment against a party that had failed to file an answer, when that party had otherwise "diligently pursued" the case)).

On March 9, 2017, Plaintiff filed an Answer to the Government's Counterclaims ("Pl. Answer"). ECF No. 50.

On March 20, 2017, the Government filed a Supplemental Brief Regarding Its Motion For Summary Judgment ("Gov't Supp. Br."). ECF No. 51.

## III.  DISCUSSION.

### A.  Jurisdiction.

The United States Court of Federal Claims has jurisdiction, under the Tucker Act, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). In addition, under 28 U.S.C. § 1491(a)(2), the United States Court of Federal Claims "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under [the Contract Disputes Act], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting

standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act."

### 1.    Counts Alleged By Plaintiff's October 7, 2015 Amended Complaint.

In this case, Plaintiff's October 7, 2015 Amended Complaint alleges four counts, under the Contracts Dispute Act ("CDA"), 41 U.S.C. § 7104.  Am. Compl. ¶¶ 28–72.  Under the CDA, a government contractor may file a complaint in the United States Court of Federal Claims within twelve months of a "final" CO decision regarding a contract "claim."  *See* 41 U.S.C. § 7103(a)[8] (requiring that each claim by a contractor against the Government relating to a contract be submitted to the CO for a decision); 41 U.S.C. § 7104(b)(1) ("[I]n lieu of appealing the decision of a contracting officer under section 7103 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims[.]"); *see also Guardian Angels Med. Serv. Dogs, Inc. v. United States*, 809 F.3d 1244, 1247 (Fed. Cir. 2016) ("Under the [CDA], a contractor has the option of appealing a contracting officer's decision either to the appropriate board of contract appeals or the United States Court of Federal Claims.  Regardless of which forum a contractor elects, however, only final contracting officer decisions may be appealed." (citation omitted)).  In addition, the "claim" submitted to the CO must be a written "demand for something due or believed to be due," and provide the CO with notice of the relief requested and the legal and factual basis for that request.  *See Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1265 (Fed. Cir. 1999).  For claims of more than $100,000, the CDA requires the contractor to certify that: (A) the claim is made in good faith; (B) the supporting data is accurate and complete to the best of the contractor's knowledge and belief; (C) the amount required accurately reflects the contract adjustment for which the contractor believes the Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor.  *See* 41 U.S.C. § 7103(b)(1)(A)–(D).  A CO's decision regarding a claim may be deemed "final" only if it is "the consummation of the agency's decisionmaking process."  *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted).

In this case, Plaintiff submitted a certified claim to CBP on April 17, 2014, for $176,193.60 as a result of the "great many changes" made by the Government to the work required by the Solicitation.  Am. Compl. Att. 6.  On July 17, 2014, a CBP CO issued a final decision denying Plaintiff's claim.  Am. Compl. Att. 7.  On June 15, 2015, *i.e.,* less than one year later, Plaintiff filed a Complaint in the United States Court of Federal Claims, seeking an increased amount of $183,788.76.  ECF No. 1.  Because Plaintiff has met the jurisdictional requirements of the CDA, the court has determined it has jurisdiction to adjudicate Counts One and Two of the Amended Complaint that respectively allege a cardinal change and a constructive change of the requirements of the Solicitation.  Am. Compl. ¶¶ 28–45, 57–65.

---

[8]  The October 7, 2015 Amended Complaint alleges that the court has jurisdiction, pursuant to 41 U.S.C. §§ 601–613.  Am. Compl. ¶ 4.  On January 4, 2011, Congress amended certain provisions of the CDA and recodified the Act at 41 U.S.C. §§ 7101–7109.  *See* Public Contracts Act of Jan. 4, 2011, Pub. L. No. 111–350, § 3, 124 Stat. 3677, 3816–26.  The amendments to the Act are not relevant in this case.  *See, e.g.*, *id.* at 3820 (amending 41 U.S.C. § 606 so that "United States Court of Federals Claims" is substituted for "United States Claims Court").  The court reads the October 7, 2015 Amended Complaint as alleging jurisdiction under 41 U.S.C. §§ 7101–7109.

Count Three of the October 7, 2015 Amended Complaint alleges an implied-in-fact contract and that Plaintiff should be compensated under *quantum meruit* principles. Am. Compl. ¶¶ 47–56. "A recovery in *quantum meruit* is based on an implied-in-law contract." *Int'l Data Prods. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007). Jurisdiction under the Tucker Act, however, "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996); *see also City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) ("[I]mplied-in-law contracts . . . impose duties that are deemed to arise by operation of law and are outside the jurisdiction of the [United States] Court of Federal Claims."). As such, the court does not have jurisdiction to adjudicate a claim alleging recovery under *quantum meruit*. The United States Court of Federal Claims, however, has jurisdiction to adjudicate an implied-in-fact contract. *See City of Cincinnati*, 153 F.3d at 1377 (holding that "a non-frivolous assertion" of an implied-in-fact contract is sufficient to establish jurisdiction in the United States Court of Federal Claims under the Tucker Act). In this case, the court has determined that it also has jurisdiction to adjudicate Count Three of the Amended Complaint, but only to the extent that it alleges the existence of an implied-in-fact contract.

Count Four of the October 7, 2015 Amended Complaint alleges that the CBP CO breached the duty of good faith and fair dealing by denying Plaintiff's certified claim on July 17, 2014. Am. Compl. ¶ 61 ("In considering Plaintiff's claim . . . the Contracting Officer breached her duty to fairly and independently consider the merits of [Plaintiff'] claim . . . . Instead, upon information and belief, she arbitrarily and capriciously rejected [Plaintiff's] claim[.]"). The duty of good faith and fair dealing is inherent in all contracts with the federal government. *See Metcalf Const. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) ("We have long applied [the duty of good faith and fair dealing] to contracts with the federal government."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 205 (Am. Law Inst. 1981) ("Every contract imposes upon each party a duty of good faith and fair dealing."). The duty requires that parties "not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Metcalf Const. Co.*, 742 F.3d at 991. The duty of good faith and fair dealing extends not only to performance, but also to the "assertion, settlement and litigation of contract claims and defenses." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. e. The United States Court of Federal Claims may consider the fairness of the CO's claim decision when determining whether a government agency has breached the duty of good faith and fair dealing. *See Mansoor Int'l Dev. Serv., Inc. v. United States*, 121 Fed. Cl. 1, 6–7 (2015) (determining that the United States Court of Federal Claims has jurisdiction to adjudicate whether a CO breached the duty of good faith and fair dealing by denying a claim). For these reasons, the court has determined that it also has jurisdiction to adjudicate Count Four of the Amended Complaint.

## 2. Counterclaims Alleged By The Government's December 10, 2015 Answer.

The Government's December 10, 2015 Answer alleges counterclaims arising under: the Special Plea in Fraud, 28 U.S.C. § 2514; the False Claims Act ("FCA"), 31 U.S.C. § 3729; and the CDA, 41 U.S.C. § 7103. Gov't Answer ¶ 75. Under the Federal Courts Administration Act, 28 U.S.C. § 1503, the United States Court of Federal Claims has jurisdiction "to render judgment upon any set-off or demand by the United States against any plaintiff in such court."

In addition, under 28 U.S.C. § 2508,

> [u]pon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

28 U.S.C. § 2508.

Under the CDA, the United States Court of Federal Claims also may review a counterclaim alleging fraud.  *See* 41 U.S.C § 7103(c).

For these reasons, the court has determined that it also has jurisdiction to adjudicate the Government's December 10, 2015 counterclaims.

### B.      Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing must be determined "as of the commencement of suit."  *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5 (1992)).  The party invoking federal jurisdiction bears the burden of establishing standing.  *See Lujan*, 504 U.S. at 560–61.  Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180–81 (2000) (internal citations omitted).

The October 7, 2015 Amended Complaint alleges that Plaintiff suffered a monetary injury that is concrete, particularized, and fairly traceable to CBP's actions.  In addition, any financial injury established by Plaintiff can be redressed by a monetary judgment.  Therefore, the court has determined that Plaintiff has standing to seek an adjudication of the claims alleged in the October 7, 2015 Amended Complaint.

### C.      Standard Of Review For A Motion For Summary Judgment, Pursuant To RCFC 56.

If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also* RCFC 56(c).  A material fact is one that might significantly affect the outcome of the suit under applicable law.  *See Anderson*, 477 U.S. at 247–48 ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted . . . .  That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").  The existence of *"some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Id.*  Where the nonmoving party only proffers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

The party moving for summary judgment has the initial burden of demonstrating the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries its burden to demonstrate an absence of any genuine issue of material fact, then the burden of proof shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.  An issue is genuine only if it might prompt a reasonable fact-finder to resolve a factual matter in favor of the nonmoving party.  *Id.* at 248.  The court is required to resolve any doubts about factual issues in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1987).  In doing so, all presumptions and inferences drawn from the evidence must be resolved in favor of the nonmoving party.  *Id.*  Nevertheless, the court must weigh the persuasiveness and plausibility of such evidence and view it "through the prism of the substantive evidentiary burden."  *Anderson*, 477 U.S. at 254.

### D.      The Parties' Cross-Motions For Summary Judgment.

### 1.      Plaintiff's September 15, 2016 Motion For Summary Judgment.

Plaintiff argues that, pursuant to RCFC 56(a), it is entitled to summary judgment with respect to Counts One, Two, and Three alleged by the October 7, 2015 Amended Complaint.  *See* RCFC 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *see also* Pl. Mot. at 1.[9]

Plaintiff first argues that CBP enacted a "constructive change" and a "cardinal change" to the contract, by requiring Plaintiff to provide fuel directly to CBP employees' vehicles, instead of an underground storage tank, and requiring Plaintiff to deliver fuel both to Newark and JFK Airports.  Pl. Mot. 5–7.  The scope of this work was "materially different" from that required by the Solicitation, because there is "no similarity" between requiring fuel to be supplied to an underground storage tank and requiring that fuel be supplied to vehicles via an "impromptu gas station."  Pl. Mot. at 6–7.  "The only thing that ties the two forms of work together is that they both involved fuel."  Pl. Mot. at 7.  Consequently, Plaintiff reasons that the change ordered by CBP was a "cardinal change" and a breach of the November 5, 2012 contract.  Pl. Mot. at 7.

_____

[9]  Plaintiff's September 15, 2016 Motion For Summary Judgment did not address Count Four of the October 7, 2015 Amended Complaint, alleging that CBP breached the duty of good faith and fair dealing.

In the alternative, Plaintiff argues that an implied-in-fact contract existed or can be inferred from the conduct of the parties, because there was a "clear meeting of minds." Pl. Mot. at 8. In this case, the parties' conduct shows that Plaintiff understood that it was to provide fuel to CBP employees, in exchange for payment by the Government. Pl Mot. at 8.

### 2. The Government's September 15, 2016 Cross-Motion For Summary Judgment And Counterclaims.

Pursuant to RCFC 56, the Government filed a cross-motion for summary judgment on all four counts alleged by the October 7, 2015 Amended Complaint, and on all three counterclaims set forth by the Government's December 10, 2015 Answer. Gov't Mot. at 1.

The Government first argues that, prior to contract award on November 5, 2012, the CO sent an e-mail to Plaintiff containing the additional terms at 6:02 PM; Plaintiff did not object, either prior to acceptance or during performance. Gov't Mot. at 15. Therefore, Plaintiff's constructive and cardinal change claims are not viable, because Plaintiff failed "to raise the problem prior to execution, or even prior to litigation, on which it later bas[ed] its challenge." *Whittaker Elec. Sys. v. Dalton*, 124 F.3d 1443, 1446 (Fed. Cir. 1997). In the alternative, under the Uniform Electronic Transactions Act ("UETA"), codified at Idaho Code Annotated § 28-50-115, an electronic record is received when it enters the recipient's computer system. The record evidences that the CO's 6:02 PM November 5, 2012 e-mail was received by Plaintiff's system at 6:02 PM on Monday, November 5, 2012. Gov't Mot. at 17–18.[10] Therefore, the contract terms were communicated to Plaintiff *prior* to Mr. Ruck's November 5, 2012 7:50 PM e-mail, confirming that Plaintiff was ready to perform, and *prior* to the CO's November 5, 2012 8:19 PM e-mail informing Plaintiff that it had been awarded then contract. Gov't Mot. at 12.

To the extent that Mr. Ruck contends that he did not receive or elected not to open the November 5, 2012 6:02 PM e-mail, Mr. Ruck is not credible because he has been subject to multiple criminal convictions.[11] Gov't Mot. at 17. Moreover, CBP and the CO had no way of

---

[10] The UETA is a model law that has been adopted by "almost all" of the states. *See Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 581 n.24 (2013). The State of Idaho, where GSC is located, has adopted the UETA. *See* Idaho Code Ann. § 28-50-115(b) ("Unless otherwise agreed between a sender and the recipient, an electronic record is received when . . . [i]t enters [the recipient's] information processing system[.]"). Although the UETA is not a federal law, the Government argues that it should determine the rights and liabilities of the parties. Gov't Mot. at 18 (citing *Everett Plywood & Door Corp. v. United States*, 190 Ct. Cl. 80, 89 (1969) (utilizing the Uniform Commercial Code in interpreting a Government contract)).

[11] In 2006, Mr. Ruck was convicted of forgery by the District Court of the Second Judicial District of the State of Idaho, County of Latah. *See State v. Ruck*, Case No. CR-2005-002960 (Idaho 2d Dist. Ct. October 10, 2006). In March 2016, Mr. Ruck was convicted by jury of 28 counts of wire fraud and theft, as result of double- and triple-billing for fuel deliveries under another contract. *See United States v. Ruck*, Case No. CR-14-0246-CEJL (D. Idaho March 8, 2016). In August 2016, Mr. Ruck was charged with, and pled guilty to, aiding and abetting the making of a false statement under 18 U.S.C. §§ 1001–1002. Gov't App'x A108–29 (8/9/16 Plea Agreement in United States District Court for the District of Idaho). In addition, on February 20,

knowing whether Mr. Ruck read the e-mail. Gov't Mot. at 19. Therefore, Plaintiff cannot rely on the defense of lack of knowledge about the new terms to the contract. Gov't Mot. at 19 (citing *NVT Techs., Inc. v. United States*, 73 Fed. Cl. 459, 464 (2006) (determining that a party could not "don[] blinders to the cover letter and other circumstances underlying the formation of the contract" in order to create ambiguity with respect to contract formation)).

With respect to Count Three, Plaintiff's implied-in-fact contract claim fails on the merits, because if there was any ambiguity on the part of offer and acceptance, it was the fault of Plaintiff for ignoring the CO's November 5, 2012 6:02 PM e-mail. Gov't Mot. at 21. In addition, a plaintiff may not recover under an implied-in-fact contract theory where an express contract exists between the parties governing the same subject matter. Gov't Mot. at 21–22 (citing *Algonac Mfg. Co. v. United States*, 192 Ct. Cl. 649, 673 (1970) ("[A]s a general rule there can be no implied contract where there is an express contract between the parties covering the same subject.")).

With respect to Count Four, the implied covenant of good faith and fair dealing does not require the CO to agree with every position taken by the contractor when the contractor submits a claim. Gov't Mot. at 24 (citing *Dotcom Assoc. I, LLC v. United States*, 112 Fed. Cl. 594, 601 (2013) (determining that the Government did not breach the duty of good faith and fair dealing when it disagreed with Plaintiff as to whether it breached the contract)).

In addition, the Government requests summary judgment on the counterclaims alleged by the December 10, 2015 Answer, that arise under: the Special Plea in Fraud, 28 U.S.C. § 2514; the FCA, 31 U.S.C. § 3729; and the CDA, 41 U.S.C. § 7103. Gov't Mot. at 27. The "undisputed evidence" establishes that: (1) the CO sent the November 5, 2012 6:02 PM e-mail to Plaintiff, setting forth the terms that Plaintiff now argues constituted a constructive change to the contract; (2) Plaintiff's computer-system received that e-mail; (3) Mr. Ruck e-mailed the CO at 7:50 PM on November 5, 2012 to confirm that Plaintiff had the "required arrangements in place and [was] dispatching trucks;" and (4) contract award was made at 8:19 PM on November 5, 2012. Gov't Mot. at 28–29. These e-mail communications establish that Plaintiff was informed of the material terms of the contract on November 5, 2012, prior to commencement of performance. Gov't Mot. at 29. On April 17, 2014, however, Plaintiff nevertheless filed a certified claim with CBP, alleging that CBP modified the contract only after performance commenced. Gov't Mot. at 29; *see also* Am. Compl. Att. 6 (4/17/14 Certified Claim). In addition, by the June 26, 2015 Complaint, Plaintiff "egregiously" submitted falsified evidence in the form of Attachment 4, consisting of the Monday, November 5, 2012 6:02 PM e-mail from the CO, that was altered to appear as if it was sent on the non-existent date of Monday, November 6, 2012, at 6:02 AM. Gov't Mot. 30. Accordingly, the Government is also entitled to summary judgment on all three of its fraud-related counterclaims.

---

2014, Plaintiff, as a corporate entity, and Mr. Ruck, as a natural person, were debarred from competing on future contracts by the Defense Logistics Agency. Gov't App'x at A120–23. This debarment was effective throughout the entire executive branch. 48 C.F.R. 9.406–1(c). Generally, debarment does not last for more than three years, and Plaintiff's debarment ended in February, 2017. *See* 48 C.F.R. § 9.406–4; *see also* Gov't App'x at A120 (evidencing that Plaintiff's debarment terminated on 2/19/17).

### 3.    Plaintiff's October 17, 2016 Response.

Plaintiff responds that, as a matter of law, the November 5, 2012 6:02 PM e-mail from the CO could not have amended the November 5, 2012 Solicitation.  Pl. Resp. at 2.  The Solicitation was prepared and published under Federal Acquisition Regulation ("FAR"), as an Invitation For Bids ("IFB").  Pl. Resp. at 2.  Under FAR 12.603(c)(4), "the contracting officer shall . . . [p]ublicize amendments to solicitations in the same manner as the initial synopsis and solicitation."  48 C.F.R. § 12.603(c)(4).  In this case, on November 5, 2012, the Solicitation originally was publically posted on www.FedBid.com.  Pl. Resp. at 2.  Consequently, any amendment to the Solicitation needed to be posted to that website.  Pl. Resp. at 3.  The CO's November 5, 2012 6:02 PM e-mail was not posted to the website.  Pl. Resp. at 3.  Therefore, CBP did not comply with the requirements of FAR 12.603(c)(4).  Pl. Resp. at 3.

In addition, FAR 14.208(a) requires that all changes to an IFB be made through the formal amendment process.  *See* 48 C.F.R. § 14.208(a).[12]  In this case, CBP never issued a formal amendment to the November 5, 2012 Solicitation.  Pl. Resp. at 3.  Instead, the CO's November 5, 2012 6:02 PM e-mail only announced a change, and this did not relieve CBP of "the necessity of issuing an amendment."  Pl. Resp. at 3.

In response to the Government's argument that the CO's November 5, 2012 6:02 PM e-mail should be construed as an offer to contract, Plaintiff argues that, in an IFB acquisition, the contractor is the offeror and the Government is the offeree.  Pl. Resp. at 4 (citing 48 C.F.R. § 2.101 (defining "offeror" as "offeror or bidder")).  Under FAR 14.301(d)(2), a bid may be considered only if its "terms and conditions . . . do not vary from the terms and conditions of the invitation for bids."  48 C.F.R § 14.301(c).  Therefore, as a matter of law, the Solicitation was an *invitation* for offers; Plaintiff's bid was an offer on the terms of the Solicitation, that subsequently was accepted by the Government, at which time the contract was made.  Pl. Resp. at 4.

The timing of the CO's November 5, 2012 6:02 PM e-mail is irrelevant, because bidding closed on November 5, 2012 at 4:30 PM.  Pl. Resp. at 5.  Therefore, Plaintiff would have been unable to respond to the e-mail prior to the bidding period closing.  Pl. Resp. at 5.  And, under FAR 52.212-1(f)(5),[13] Plaintiff could not withdraw its offer, after receiving the November 4, 2012

---

[12] FAR 14.208(a) provides:

> [i]f it becomes necessary to make changes [to the IFB], such changes shall be accomplished by amendment of the [IFB] using Standard Form 30, Amendment of Solicitation/Modification of Contract.  The fact that a change was mentioned at a pre-bid conference does not relieve the necessity for issuing an amendment.

48 C.F.R. § 14.208(a).

[13] FAR 52.212-1(f)(5) provides

> Offers may be withdrawn by written notice received at any time before the exact time set for receipt of offers.  Oral offers in response to oral solicitations may be withdrawn orally.  If the solicitation authorizes facsimile offers, offers may be

6:02 PM e-mail, because "[o]ffers may be withdrawn by written notice received at any time *before* the exact time set for receipt of offers."  48 C.F.R. § 52.212-1(f)(5) (emphasis added).

Plaintiff also disputes whether the Attachment 4 was altered.  Pl. Resp. at 6.  In support, Plaintiff attached expert reports of the Government's computer forensics expert, Mr. Odom, and Plaintiff's computer forensics expert, Mr. Berryhill, that disagree as to whether Attachment 4 was altered.  Pl. Resp. at 6; *see also* 3/18/16 Odom Rep. at 5 (concluding that Attachment 4 was altered); 6/2/16 Berryhill Rep. at 3 (concluding that Mr. Odom's conclusion lacked factual support).  As such, whether Plaintiff engaged in fraudulent conduct is a material and genuinely disputed fact, precluding the Government from prevailing on summary judgment on the Government's counterclaims.  Pl. Resp. at 6.

### 4.    The Government's October 17, 2016 Response.

The Government responds that Plaintiff's argument is "based on the simple – but faulty – premise that the terms of the parties' contract are defined solely by reference to the [S]olicitation posted on www.FedBid.com, without taking into consideration the other written communications between the parties[.]"  Gov't Resp. at 1.  Notably, Plaintiff fails to mention that Mr. Ruck and the CO exchanged multiple communications that formed the contract.  Gov't Resp. at 1–4.

The most that Plaintiff can argue is that Mr. Ruck did not see the CO's November 5, 2012 6:02 PM e-mail on the same day that it was sent.  Gov't Resp. at 4.  But, since CBP had no way of knowing that Mr. Ruck did not read the e-mail, the agency should not be held liable based on Plaintiff's oversight or lapse.  Gov't Resp. at 6.  The record shows that the CO was informed by Plaintiff that it was ready and willing to perform.  Gov't Resp. at 6; *see also* Gov't App'x at A27 (11/5/12 7:50 PM e-mail from Mr. Ruck that Plaintiff "had required arrangements in place" and "[i]f you want to send the orders we will be ready").  Therefore, as a matter of law, Plaintiff cannot seek damages that arose because of Plaintiff's silence.  *See Whittaker Elec. Sys.*, 124 F.3d at 1446 (holding that a contractor is precluded "from challenging the validity of a contract . . . where it fails to raise the problem prior to execution, or even prior to litigation, on which it later bases its challenge").  Moreover, Idaho adopted the UETA, so that an e-mail is considered to be "received" when it enters into the recipient's "information processing system . . . even if no individual is aware of its receipt."  Idaho Code Ann. § 28-50-115(b), (e).

In any event, regardless of whether Mr. Ruck read the November 5, 2012 6:02 PM e-mail or not, it is "undeniable" that he read the CO's November 5, 2012 8:19 PM e-mail, because he responded to it at 10:04 PM on that same day.  Gov't Resp. at 8.  The November 5, 2012 8:19 PM e-mail specified that Plaintiff would be required to provide gas-station style service at two different

---

withdrawn via facsimile received at any time before the exact time set for receipt of offers, subject to the conditions specified in the solicitation concerning facsimile offers.  An offer may be withdrawn in person by an offeror or its authorized representative if, before the exact time set for receipt of offers, the identity of the person requesting withdrawal is established and the person signs a receipt for the offer.

48 C.F.R. § 52.212-1(f)(5).

locations (JFK Airport and Newark Airport), verified by Mr. Ruck's response requesting the "exact location and on site contact information for these two locations." Gov't Resp. at 8 (citing Gov't App'x at A124).

### 5.    The Government's November 3, 2016 Reply.

The Government emphasizes that "both sides agree" that CBP did not award any contract through www.FedBid.com, and eventually canceled the Solicitation. Gov't Reply at 2–3; *see also* Pl. Am. Compl. ¶ 10 (stating that GSC was awarded the contract "via email"); Pl. Am. Compl. ¶ 18 (stating that CBP cancelled the Solicitation. If CBP made award through www.FedBid.Com, Plaintiff would have been charged a fee by FedBid, but, Plaintiff was never charged such a fee. Gov't Reply at 3.

In addition, the November 5, 2012 agreement was a "no-cost contract," wherein a vendor performs a service that an agency would otherwise perform, but is paid by third parties instead of by the agency. Gov't Reply at 8. Therefore, Plaintiff's argument that the FAR prevented the Government from requiring performance other than required by the Solicitation is incorrect, because the FAR does not apply to Government contracts that do not involve an expenditure of appropriated funds, including no-cost contracts, such as the one at issue in this case. Gov't Reply at 9 (citing 48 C.F.R. § 1.104 ("The FAR applies to all acquisitions as defined in part 2 of the FAR, except where expressly excluded.")); *see also* 48 C.F.R. § 2.101 ("Acquisition means the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government[.]"); *Fid & Cas. Co. of New York*, B-281281, 99-1 CPD ¶ 16 (Comp. Gen. Jan 21, 1999) ("[T]he FAR, by its terms, applies only to government acquisitions of supplies or services with appropriated funds."). Consequently, the FAR does not apply to the November 5, 2012 contract between the parties. Gov't Reply at 9.

### 6.    The Government's March 20, 2017 Supplemental Brief.

The Government adds that Plaintiff "did not offer any evidence . . . to contest the Government's allegation that GSC knowingly and intentionally manipulated the [November 5, 2012] 6:02 PM e[-]mail. " Gov't Supp. Br. at 4. Plaintiff did, however, attach the forensic expert reports of Mr. Odom and Mr. Berryhill to its October 17, 2016 Response. Gov't Supp. Br. at 4. In addition, there is Mr. Ruck's September 30, 2015 Affidavit, wherein Mr. Ruck asserts that the incorrect date on Attachment 4 was caused by an unknown computer error. Gov't Supp. Br. at 4; *see also* 9/30/15 Ruck Affidavit ¶ 5. Therefore, "the Government recognizes that the court may conclude that there now are material issues of fact in dispute regarding whether [Plaintiff] knowingly and intentionally submitted a false claim or false evidence in support of its claim." Gov't Supp. Br. at 5.

### E.    The Court's Resolution.

#### 1.    Claims Alleged By Plaintiff's October 7, 2015 Amended Complaint.

##### a.    Counts One And Two: Cardinal And Constructive Change.

Counts One and Two of the October 7, 2015 Amended Complaint allege a cardinal and constructive change of the November 5, 2012 contract between Plaintiff and CBP. A "constructive

change" exists when a "contractor performs work beyond the contract requirements without a formal order, either by an informal order or due to the fault of the Government." *Int'l Data Prods. Corp.*, 492 F.3d at 1325.   When a constructive change to a contract results in work that is "materially different" than that ordered by the contract, it is considered a "cardinal change."   *See Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) ("A cardinal change is similar [to a constructive change], but has two distinguishing features: (1) a cardinal change requires work materially different from that specified by the contract; and (2) a cardinal change amounts to an actual breach of contract.").

Plaintiff is correct that, under the FAR, a government contractor's submission of a bid in an "Invitation-For-Bids" type proceeding (including a reverse-auction hosted on www.FedBid.com), constitutes an "offer" incorporating the terms of the Solicitation.   *See* 48 C.F.R. § 14.301(d)(2) ("[A] bid may be considered only if award on the bid would result in a binding contract with terms and conditions that do not vary from the terms and conditions of the invitation for bids.").   In such a situation, the contractor is the offeror and the Government is the offeree.   *See* 48 C.F.R. § 2.101 (defining "Offeror" as "offeror *or bidder*" (emphasis added)).

In this case, however, the Government did *not* accept the terms originally offered by Plaintiff via www.FedBid.com.   Instead, the CO's November 5, 2012 6:02 PM e-mail explicitly rejected the terms offered by Plaintiff:

> *What CBP needs currently* is a Fuel tank with capabilities to dispense fuel into our employee's personal own vehicles.   Also, we will require you to accept personal credit cards from CBP employees. Although I cannot guarantee that you will sell all the fuel; I estimated that the current need for fuel is approximately 80,000 gallons.   40,000 gallons for JFK [A]irport and 40,000 for Newark [L]iberty Airport.

Gov't App'x at A30 (emphasis added).

The terms suggested by the CO's November 5, 2012 6:02 PM e-mail are materially different from the terms proposed by the Solicitation.   As such, the CO's November 5, 2012 6:02 PM e-mail was a counteroffer, with new contract terms.   *See First Commerce Corp. v. United States*, 335 F.3d 1373, 1381 (Fed. Cir. 2003) (holding that a letter from a federal agency proposing materially different contract terms constituted a counteroffer); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 39 ("A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.").

The parties do not dispute that the November 5, 2012 6:02 PM e-mail was received by Plaintiff's e-mail server within moments of being sent by the CO.   9/30/15 Ruck Affidavit ¶ 4 (stating that Plaintiff's server received the email on November 5, 2012 at "23:02:20 UTC or 3:02:20 PM Pacific time," *i.e.*, the equivalent of 6:02 PM EST); Gov't App'x at A51 (Record of Plaintiff's e-mail server indicating receipt of November 5, 2012 6:02 PM e-mail); A76 (2/16/16 Ruck Dep.) (testifying that "[The e-mail] was received from our ISP [on November 5, 2012] at 3:02 p.m. Pacific Time [*i.e.*, 6:02 PM EST]").   But, on November 5, 2012 at 7:50 PM, Mr. Ruck sent a reply e-mail that accepted these new terms: "Sir, I have required arrangements in place and

am dispatching trucks.  If you want to send the orders we will be ready." Gov't App'x at A27. And, at 8:19 PM, the CO sent an additional e-mail confirming "[t]his is to inform you of the selection of your company to bring fuel trucks to John F. Kennedy International Airport and Newark Liberty International Airport and sell fuel directly to US Customs Employees," *i.e.*, repeating the same terms of the November 5, 2012 6:02 PM e-mail. Gov't App'x at A35. This was followed, at 10:04 PM, by Mr. Ruck's final e-mail, confirming the new terms: "I need exact location and on site contact information for *these two locations*." Gov't App'x at A124 (emphasis added). At this juncture, Plaintiff accepted the terms of CBP's counteroffer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 50(1) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."). Then, Plaintiff commenced performance in accordance of the new terms. Am. Compl. ¶ 15.

By accepting the Government's counteroffer, Plaintiff agreed to an express contract, the terms of which consisted of the text of the e-mails between the parties. An express contract with the Government "may arise as a result of the confluence of multiple documents." *See D&N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003). Common law governs the contractual relationship between a private party and the United States. *See United States v. Winstar Corp.*, 518 U.S. 839, 871 (1996) (holding that "ordinary principles of contract construction and breach . . . [that apply] to any contract action between private parties" govern a contract with the Government). Whether a contract exists is a "mixed question of law and fact," but the interpretation of a contract is a "question of law." *1st Home Liquidating Trust. v. United States*, 581 F.3d 1350, 1355 (Fed. Cir. 2009). In *Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003), the United States Court of Appeals for the Federal Circuit held that an express contract requires the following elements:

> (1) mutuality of intent to contract;

> (2) lack of ambiguity in offer and acceptance;

> (3) consideration; and

> (4) a government representative with actual authority to bind United States in contract.

*Id*. at 1353.

In this case, the e-mails between the parties evidence all four elements of an express contract. First, there was mutuality of intent: both parties expressed an "objective manifestation" of assent to contract with the other via their e-mails. *Id.* (holding that contract formation requires an "objective manifestation of voluntary, mutual assent"). Second, there was consideration, because the contract contained mutual promises from which each party obtained a benefit. *See* RESTATEMENT (SECOND) OF CONTRACTS § 71 (explaining that "[t]o constitute consideration, a performance or a return promise must be bargained for" and that "[t]he performance may consist of (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation"). Plaintiff had the right of access to sell fuel to CBP employees at CBP facilities in two different locations: Newark Airport and JFK Airport. Gov't App'x at A35 (November 5, 2012 8:19 PM e-mail notice of award giving Plaintiff the right to bring fuel trucks

to JFK and Newark Airports and sell directly to CBP employees).  CBP's emergency fuel needs were met.  9/9/16 Conteh Decl. ¶ 2.  Third, there is no dispute that the CO had actual authority to bind the Government in contract.

Finally, the November 5, 2012 6:02 PM e-mail counteroffer unambiguously communicated the Government's new requirements; *i.e.*, that (1) gasoline would be delivered to both Newark and JFK Airports; and (2) be sold directly to CBP employees.  Gov't App'x at A30.  Mr. Ruck's return e-mails cannot be construed as anything other than an unambiguous acceptance.  Gov't App'x at A27 (11/5/12 7:50 PM e-mail stating: "Sir, I have required arrangements in place and am dispatching trucks. If you want to send the orders we will be ready."); Gov't App'x at A124 (11/5/12 10:04 PM e-mail stating: "I need exact location and on site contact information for *these two locations*." (emphasis added)).

Therefore, the counteroffer and acceptance resulted in the formation of an express "no-cost" contract between the parties, under which the contractor performs a service that an agency would otherwise perform, but is paid by a third party instead of the agency.  *See Ober United Travel Agency, Inc. v. United States Dept. of Labor*, 135 F.3d 822, 823 (D.C. Cir. 1998) (a "no-cost contract" exists where the "government neither directly pays [a contractor] for its services nor is obligated to buy" goods and services)).[14]  In *Ober United Travel Agency*, several federal agencies entered into "no-cost" contracts with travel agencies, under which travel services were sold directly to Government employees.  *See id.* at 823.  Here too, Plaintiff contracted for the right to sell directly to CBP *employees*, not to sell goods directly to CBP.  The parties agreed to an express contract that required Plaintiff to deliver gasoline to both Newark and JFK Airports and required Plaintiff to sell gasoline directly to CBP employees.  Consequently, there was no constructive or cardinal change to the work required by the contract.

To avoid the significance of the unambiguous terms of the November 5, 2012 6:02 PM and 8:19 PM e-mails, Plaintiff dismisses the e-mails as irrelevant, arguing that the CO did not follow the proper FAR procedures regarding amendments to the Solicitation.  Pl. Resp. at 3–4 (citing 48 C.F.R. § 14.208(a)).[15]  As previously discussed, the CO's November 5, 2012 6:02 PM e-mail was

---

[14] As explained by a leading text, no-cost contracts are used by federal agencies for a variety a services, including:

> real estate broker services; conference, event and trade show planning services; travel services; home-finding and relocation services for federal employees; photocopying, distribution and sale of agency documents; redaction and publication of agency news report[s]; operation of [an] agency lost and stolen securities program; Defense Base Act (DBA) workers' compensation insurance coverage; legal services; transient solider lodging services; and phone services to detainees.

Young Ha Cho, *No-Cost Contracts: A Primer*, 5 GOV'T CONT. COSTS, PRICING, & ACCOUNTING REP. ¶ 45 (2010).

[15] In acquisitions governed by sealed bidding procedures, FAR 14.208(a) provides:

a counteroffer for a "no-cost" contract with Plaintiff that was accepted by Mr. Ruck's November 5, 2012 7:50 and 10:04 PM e-mails and Plaintiff's subsequent performance, without objection. Plaintiff has provided no citation to law requiring that, once CBP posted the Solicitation on www.FedBid.com, the contract had to be made exclusively through that platform, and therefore any changes had to be incorporated via amendments to the Solicitation.

Next, Plaintiff argues that the November 5, 2012 6:02 PM e-mail was sent after the closing time for bids specified by the Solicitation and, therefore, Plaintiff never had an opportunity to withdraw its offer prior to performance.  Pl. Resp. at 5 (citing 48 C.F.R. § 52.212-1(f)(5)).[16]  But, the Solicitation had no effect on contract formation because the CO's November 5, 2012 6:02 PM e-mail was a counteroffer.  Of course, Plaintiff could have objected to the new terms or refused to accept them or responded with a counteroffer with different terms.  Plaintiff took none of these actions, but, instead, commenced with performance on the counteroffer.

Moreover, the FAR did not apply since it only applies to contracts that involve the spending of appropriated funds.  *See* 48 C.F.R. § 1.104 ("The FAR applies to all acquisitions as defined in part 2 of the FAR[.]"); *see also* 48 C.F.R. § 2.101 (defining "acquisition" as "acquiring by contract with *appropriated funds* of supplies or services (including construction) by and for the use of the Federal Government").  A "no-cost" contract like the contract at issue in this case, however, does not involve the spending of appropriated funds.  *See* Young Ha Cho, *No-Cost Contracts: A Primer*, 5 GOV'T CONT. COSTS, PRICING, & ACCOUNTING REP. ¶ 45 (2010) (explaining that no-cost contracts do not use appropriated funds).

Finally, Plaintiff complains that Mr. Ruck was not aware of the additional requirements communicated via the November 5, 2012 6:02 e-mail until after performance began.  9/14/16 Ruck Affidavit ¶¶ 2–5.[17]  The CO and CBP, however, had no duty to inquire whether Mr. Ruck read the e-mail.  In any event, it is undisputed that Mr. Ruck received and read the November 5, 2012 8:19 PM e-mail, and that contained the same terms as the November 5, 2012 6:02 PM e-mail: Plaintiff

---

> If it becomes necessary to make changes in quantity, specifications, delivery schedules, opening dates, etc., or to correct a defective or ambiguous invitation, such changes shall be accomplished by amendment of the invitation for bids using Standard Form 30, Amendment of Solicitation/Modification of Contract. The fact that a change was mentioned at a pre-bid conference does not relieve the necessity for issuing an amendment. Amendments shall be sent, before the time for bid opening, to everyone to whom invitations have been furnished and shall be displayed in the bid room.

48 C.F.R. § 14.208(a).

[16] "Offerors are responsible for submitting offers, and any modifications, revisions, or withdrawals, so as to reach the Government office designated in the solicitation by the time specified in the solicitation."  48 C.F.R. § 52.212-1(f)(1).

[17]  Again, there is no dispute that Plaintiff's e-mail server received the November 5, 2012 6:02 PM e-mail within moments of being sent.

was instructed to "bring fuel trucks to John F. Kennedy International Airport and Newark Liberty International Airport and sell fuel directly to US Customs Employees." Gov't App'x at A35. And, Plaintiff performed.

For these reasons, the court has determined that the Government is entitled to summary judgment with respect to Counts One and Two of the Amended Complaint, because there is no genuine dispute of material fact that there was a constructive or cardinal change. The allegedly "materially different work" was, as a matter of law, a counteroffer on which Plaintiff performed. *See First Commerce Corp.*, 335 F.3d at 1381–82 (holding that a letter from a federal agency proposing materially different terms was a counteroffer, and that "counteroffers may be accepted by conduct"); *see also Bell/Heery*, 739 F.3d at 1335 (holding that there was no constructive or cardinal change when the federal agency did not require the plaintiff to engage in any work beyond what was required by the contract).

### b.   Count Three: Implied-In-Fact Contract.

Count Three alleges the existence of an implied-in-fact contract. Am. Compl. ¶¶ 46–56. An implied-in-fact contract requires the court to find that circumstances surrounding performance show: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority on the part of the Government representative to bind the Government in contract. *See City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (discussing the factors required to find an implied-in-fact contract with the Government). In other words, "the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs." *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

As a matter of law, an implied-in-fact contract is "inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923). In this case, Plaintiff's conduct consisted of supplying gasoline directly to CBP employees' vehicles via impromptu gas stations set up at CBP facilities, with CBP allowing Plaintiff access to CBP facilities. To the extent these circumstances infer the existence of the contract between the parties, it was a "no-cost" contract, under which CBP only allowed Plaintiff to use its facilities to sell CBP employees gasoline. In short, CBP paid Plaintiff no money, nor did Plaintiff pay CBP.

In any event, Plaintiff may not recover under an implied-in-fact contract when there is an express contract between the parties governing the same subject matter. *See Trauma Service Group v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("[A]n implied-in-fact contract cannot exist if an express contract already covers the same subject matter."). In this case, any implied-in-fact contract that could be inferred from the circumstances surrounding Plaintiff's performance evidences the same elements as the express contract created by the e-mail exchange conducted between the CO and Mr. Ruck; *i.e.*, a "no-cost" contract.

For these reasons, the Government is entitled to summary judgment with respect to Count Three of the Amended Complaint.

21

### c.      Count Four: Breach Of Duty Of Good Faith And Fair Dealing.

Count Four alleges that the CBP CO breached the duty of good faith and fair dealing by denying Plaintiff's certified claim on July 17, 2014 without "fairly and independently consider[ing] the merits of [Plaintiff's] claim, including, but not limited to the adequacy of its supporting data," as required by the FAR. Am. Compl. ¶ 61 (citing 48 C.F.R. § 33.211(d) ("The contracting officer shall issue a decision with a reasonable time, taking into account: (1) [t]he size and complexity of the claim; (2) [t]he adequacy of the contractor's supporting data; and (3) [a]ny other relevant factors.")).

The FAR, however, does not apply to the terms of the "no-cost" contract, because a "no-cost" contract does not involve the spending of appropriated funds. *See* 48 C.F.R. § 1.104 ("The FAR applies to all acquisitions as defined in part 2 of the FAR[.]"); *see also* 48 C.F.R. § 2.101 (defining "acquisition" as "acquiring by contract with *appropriated funds* of supplies or services (including construction) by and for the use of the Federal Government").

Nevertheless, the duty of good faith and fair dealing requires both contracting parties "not to interfere with the other party's *performance* and not to act so as to destroy the *reasonable expectations* of the other party regarding the *fruits of the contract*." *See Metcalf Const. Co.*, 742 F.3d 991 (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)) (emphasis original); *see also Precision Pine & Timber, Inc., v. United States*, 596 F.3d 817, 820 n.1 (Fed. Cir. 2010) ("Both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing.").

In this case, Plaintiff's certified claim did not represent a "reasonable" expectation as to the fruits of the contract, because Plaintiff was not paid anything by CBP. Gov't App'x at A30 (11/5/12 6:02 PM e-mail providing terms of "no-cost" contract between the parties). In addition, it was not "reasonable" for Plaintiff to claim $4,800 as a FedBid fee, when FedBid had never assessed any fee from Plaintiff. Am. Compl. Att. 6 (4/17/14 Certified Claim requesting "the fee rightly due FedBid Inc., which has been estimated at $4,800"); *see also* Gov't App'x at A81 (2/16/16 Ruck Dep.) (MR. RUCK: "Through the cancellation of the solicitation, FedBid did not assess a fee to GovServ.").

For these reasons, the court has determined that the Government is entitled to summary judgment with respect to Count Four of the Amended Complaint.

### 2.      Counterclaims Alleged by The Government's December 10, 2015 Answer.

The December 10, 2015 Answer also alleges three counterclaims: (1) Plaintiff's entire amended complaint should be dismissed under the Special Plea in Fraud, 28 U.S.C. § 2514; (2) Plaintiff should pay a penalty of $11,000 for each false claim submitted to CBP under the FCA, 31 U.S.C. § 3729(a)(1); and (3) under the CDA, 41 U.S.C. § 7103(c)(2), the Government is owed damages equivalent to the unsupported portions of Plaintiff's claim, *i.e.*, $183,788.86. Gov't Answer ¶¶ 126–139.

These counterclaims are all based on the same alleged facts. Gov't Answer ¶¶ 75–125. First, by virtue of the November 5, 2012 6:02 PM e-mail from the CO, Plaintiff was informed of the terms of the November 5, 2012 contract,[18] prior to the November 5, 2012 8:19 PM notice of award e-mail, and prior to Plaintiff beginning performance. Gov't Answer ¶ 92. Second, Plaintiff nevertheless sent a certified claim to CBP, claiming $176,193.60 in losses stemming from "a great many changes in the requirement." Gov't Answer ¶¶ 97–98. Third, and most importantly, on June 26, 2015, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging that Plaintiff was not informed of the gas-station style service requirement by the CO until "after" Plaintiff dispatched fuel trucks to JFK and Newark Airports. Gov't Answer ¶¶ 103–107; *see also* Compl. ¶ 12 ("Once the fuel trucks were already sent, some on site and some en route, [the CO] informed [Plaintiff] that they would now need to dispense fuel directly from the fuel tankers into Government employee owned vehicles."). In support of that allegation, Plaintiff attached, as Attachment 4, an e-mail with a sent date of "*Monday, November 6*, 2012 at *6:02 AM*." Gov't Answer ¶ 112 (emphasis added); *see also* Compl. Att. 4.

November 6, 2012 was a Tuesday, not a Monday, so the e-mail attached to the June 26, 2015 Complaint as Attachment 4 was incorrectly dated. This error is apparent from Attachment 4, that shows that the e-mail was incorrectly dated as "*Monday, November 6*, 2012 6:02 AM, in contrast to several other e-mails marked with the correct date of Monday, November 5, 2012. Gov't Answer ¶ 115 (emphasis added). Consequently, the December 10, 2015 Answer alleges that Attachment 4 was "altered . . . to make it appear that it was sent a day later than it was." Gov't Answer ¶ 113. In addition, the Government asserts that Plaintiff: (a) supported an allegation with false evidence, and (b) "continues to falsely assert" that it was unaware of the material terms of the contract prior to beginning performance. Gov't Answer ¶ 125.

Plaintiff responds that there is a factual dispute as to whether the e-mail at issue was altered. Pl. Resp. at 6. In support, Plaintiff has filed reports prepared by computer forensic experts for both parties. 3/18/16 Odom Rep; 6/2/16 Berryhill Rep. The Government's expert, Mr. Odom, reports that "it is my opinion the email provided as Attachment 4 by Mr. Ruck and [Plaintiff] is not the original email located on [Plaintiff's] systems . . . and, as such, was manually altered to reflect a different sent date other than its original sent date." 3/18/16 Odom Rep. at 5. Plaintiff's expert, Mr. Berryhill, states that Mr. Odom's report is unreliable because Mr. Odom did not conduct a proper forensic examination of Plaintiff's e-mail server. 6/2/16 Berryhill Rep. at 3. In addition, Mr. Berryhill opines that several of Mr. Odom's opinions lack factual support, because he did not have electronic copies of the evidence. 6/2/16 Berryhill Rep. at 3. In addition, Plaintiff filed the September 30, 2016 Ruck Affidavit, wherein Mr. Ruck attested that Attachment 4 was altered as a result of a computer error. 9/3/16 Ruck Affidavit ¶ 5.

Summary judgment is appropriate only when there is no genuine dispute as to any material fact. *See Anderson*, 477 U.S. at 255; *see also* RCFC 56(a). "As to materiality, the substantive law

---

[18] This includes the requirement that CBP needed gas-station style service, for which its employees would pay via individual debit and credit cards, and the requirement that Plaintiff furnish gas-station style service at both the Newark and JFK Airports. *See, e.g.*, Gov't App'x at A30 (e-mail from the CO to Mr. Ruck evidencing a sent time of Monday, November 5, 2012 at 6:02 PM and containing both requirements).

will identify which facts are material." *Anderson,* 477 U.S. at 248. Whether a dispute is "genuine" turns upon whether a reasonable fact-finder could find for the non-movant. *Id.*

By the March 20, 2017 Supplemental Brief, the Government states that "the record . . . arguably contains bare, minimal evidence of a factual dispute regarding whether [Plaintiff] knowingly and intentionally manipulated the email to support its claim," and "the Government recognizes that the [c]ourt may conclude that there now are material issues of fact in dispute." Gov't Supp. Br. at 4–5. The court agrees. For these reasons, the court has determined that the Government is not entitled to summary judgment with respect to the counterclaims alleged by the December 10, 2015 Answer.

## IV.   CONCLUSION.

For the aforementioned reasons, Plaintiff's September 15, 2016 Motion For Summary Judgment is denied. The court, however, grants-in-part, and denies-in-part, the Government's September 15, 2016 Cross-Motion For Summary Judgment. Summary judgment is granted in favor of the Government with respect to all four counts of Plaintiff's October 7, 2015 Amended Complaint. Summary judgment is denied with respect to the three counterclaims alleged by the Government's December 10, 2015 Answer.

The Government will advise the court whether it will request a trial on the three counterclaims asserted in the December 10, 2015 Answer by May 1, 2017.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**